UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LAURENE E. WOLFORD,<br><br>   Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of the Social Security Administration,<br><br>   Defendant. | CAUSE NO. 3:21-CV-738 DRL-MGG |

<u>ORDER AND OPINION</u>

Laurene E. Wolford appeals from the Social Security Commissioner's final judgment denying her disability insurance benefits. Ms. Wolford requests either reversal of the Commissioner's decision or remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court vacates the administrative decision and remands for further proceedings.

BACKGROUND

Ms. Wolford suffers from a variety of physical and mental health conditions. They include, among many others, anxiety and depression [R. 799], hearing loss [R. 1427], rheumatoid arthritis [R. 113], systemic lupus erythematosus [R. 1081, 1671], and cervical degenerative disc disease [R. 807, 809] that has required multiple surgeries [R. 845]. She has experienced multiple foot and toe injuries that have sent her to the hospital and required multiple surgeries, some of which resulted in complications [R. 610-11, 688, 691, 820, 1625]. She suffers from paralysis of the right vocal cord following her cervical spine surgery [R. 1112, 1118].

Ms. Wolford filed an application for disability insurance benefits on May 31, 2018, alleging disability beginning March 16, 2018 [R. 234]. Her application was initially denied on September 13, 2018 and again on November 26, 2018 following a request for reconsideration [*id.*]. Ms. Wolford

appeared before an administrative law judge (ALJ) in a hearing on July 25, 2019 and again in a supplemental hearing on January 16, 2020 [*id.*]. In an April 7, 2020 decision, the ALJ denied her petition [R. 231-33]. Ms. Wolford requested review by the Appeals Council, which subsequently remanded on November 27, 2020 [R. 250]. The ALJ held a new hearing on March 23, 2021 and again issued an unfavorable decision on March 31, 2021 [R. 10, 16].

Ms. Wolford meets the insured status requirements through September 30, 2022 [R. 12 ¶ 1]. The ALJ found that she had not engaged in substantial gainful activity since March 16, 2018 [R. 12 ¶ 2], and that her severe impairments were cervical degenerative disc disease, asthma, and systemic lupus erythematosus—an autoimmune disease in which the immune system attacks its own tissues, causing widespread inflammation and tissue damage [R. 12 ¶ 3]. The ALJ found that Ms. Wolford had a residual functioning capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: lifting and carrying 20 pounds occasionally but 10 pounds frequently; pushing and pulling 20 pounds occasionally but 10 pounds frequently; siting, standing, and walking, each limited to six hours out of an eight-hour workday; occasionally reaching overhead bilaterally and occasionally climbing ramps and stairs, but not climbing ladders, ropes, or scaffolding; and occasionally balancing, stooping, kneeling, crouching, and crawling but not working at unprotected heights or experiencing any concentrated exposure to humidity, dusts, odors, fumes, other pulmonary irritants, or extreme cold and heat [R. 14-16 ¶ 5]. Still, the ALJ concluded that Ms. Wolford was able to perform past relevant work, including work as a hotel clerk, hospital admitting clerk, or a social service aide [R. 16 ¶ 6]. The Appeals Council denied her second request for review, and the decision became final [R. 1-3].

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's

decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [his] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (quotation omitted). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). This high deference is lessened whenever the ALJ's findings are built on errors of fact or logic. *Thomas*, 745 F.3d at 806.

## DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual functioning capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Ms. Wolford challenges the ALJ's disability determination and advances two primary arguments. First, she says the ALJ mishandled the analysis of her vocal cord paralysis—both in

3

determining whether it is a severe impairment and whether it alters the conclusion about her residual functional capacity (RFC). Second, she says the ALJ lacked adequate explanation of how he weighed medical opinions in accordance with governing regulations.

      A.      *Vocal Cord Paralysis Conclusions.*

Steps two and three of the disability determination process require an ALJ to determine whether a claimant has a recognized severe impairment or combination of impairments that rise to severe, or if not, whether any of her impairments rise to the same level so as to be conclusively disabling. 20 C.F.R. §§ 404.1520(a), (c). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." *Id.*

When deciding whether a claimant's impairments significantly limit her ability to do basic work activities, an ALJ must build an "accurate and logical bridge" between the evidence and the conclusion. *Thomas*, 745 F.3d at 806. In so doing, the ALJ needn't address every piece of evidence, but he must explain why lines of evidence that don't support his conclusion were rejected. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Remand is necessary when it is unclear if the ALJ examined the "full range of medical evidence," *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001), or if the court cannot "trace the ALJ's path of reasoning," *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

In determining that vocal cord paralysis wasn't a severe impairment, the ALJ explained that Ms. Wolford "has been noted to have a clear voice and displayed normal ability to communicate," offering two citations to the record [R. 12]. First, the ALJ cited an examination by Dr. Matthew Provenzano, an otolaryngologist who was evaluating hoarseness and dysphagia [R. 1112-1118 (Ex. B15F)]. The doctor said Ms. Wolford's right vocal cord was paralyzed [R. 1118], but her voice was clear and her ability to communicate was normal [R. 1116]. At that visit, Ms. Wolford reported that her voice had been hoarse and much weaker [R. 1112]. Second, the ALJ cited a follow-up examination by the same otolaryngologist who noted that Ms. Wolford's ability to communicate was normal, but

her voice was breathy and hoarse [R. 1432 (Ex. B20F)]. Ms. Wolford asserts that this evidence doesn't support the decision that her vocal cord paralysis was less than severe.

In response, the Commissioner says the record supports the ALJ's conclusion that Ms. Wolford's vocal cord paralysis was not severe. Specifically, the Commissioner cites Dr. James Todd's opinion that vocal cord paralysis is not a severe impairment [R. 87-88]. Dr. Todd, a board-certified internist (and cardiologist),[1] opined that a person with vocal cord paralysis would have difficulty projecting one's voice but that the condition would not interfere normally with work [R. 87].

Whether this could be a logical bridge, the administrative decision never builds it. The decision mentions Dr. Todd's "opinion"—but only generically using that word alone—and then contrasts this undescribed "opinion" solely against Ms. Wolford's subjective complaints about pain and breathing issues [R. 15]. If the administrative decision considered Dr. Todd's opinion vis-à-vis her vocal cord paralysis, no one would know it [R. 12-13]. *See Clifford*, 227 F.3d at 874. The Commissioner cannot fashion a logical bridge that the administrative decision never built. *See Phillips v. Astrue*, 413 F. Appx. 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence.").

The Commissioner also cites the same two medical records on which the administrative decision relied. The ALJ cited the otolaryngologist's conclusion—indeed twice over—that Ms. Wolford's ability to communicate was normal. Out of the gate, this might seem substantial evidence for concluding that her vocal cord paralysis isn't a severe impairment, but these are momentary observations during two visits, without comment on the duration of clear communication. Ms. Wolford admitted she could talk for about an hour, but then her voice would give way and require a

---

[1] Ms. Wolford criticizes the Commissioner's reliance on Dr. Todd's opinion in part because he is a cardiologist, but it appears he is also a board-certified internist. Vocal cord paralysis, though often treated by otolaryngologists, is a frequently seen clinical problem for internists as well.

recovery period, potentially of several hours [R. 117]. The medical observation of a clear voice during a standard office visit offers no assessment of whether her voice might remain clear after an hour.

To the extent that the Commissioner wants to defend the administrative decision with Dr. Todd's opinion—one that the decision found persuasive, even if just generally—one cannot ignore that Dr. Todd recommended a speech therapy consult because Ms. Wolford had not been evaluated and because this is his "policy" [R. 87]. The ALJ had the duty to identify any necessary medical evaluations, particularly to determine whether Ms. Wolford's inability to communicate much more than an hour without substantial rest (if to be credited) would significantly impair her ability to work. *See Suide v. Astrue*, 371 F. Appx. 684, 690 (7th Cir. 2010) ("it [is] the ALJ's responsibility to recognize the need for further medical evaluations of [a claimant's] conditions before making her residual functional capacity and disability determinations"). After all, the vocational expert testified that if Ms. Wolford was right, her vocal cord impairment would rule out all her past work [R. 125].

Also, as it stands, the RFC seems to leave unaccounted any speech-related limitations, whether severe or not. An individual's ability to communicate normally during a short interaction does not mean the individual can communicate clearly over an entire workday. No record evidence, and no rationale within the administrative decision, addresses this point; and instead the record reflects a recommendation for further evaluation. Thus the administrative decision lacks a logical explanation for seemingly rejecting Ms. Wolford's testimony on this point as well as Dr. Todd's recommendation for further speech evaluation. *See Indoranto*, 374 F.3d at 474; *see, e.g., Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (ALJ may not selectively choose facts supporting a finding of no disability and ignore evidence that points to disability); *Scrogham v. Colvin*, 765 F.3d 685, 698-99 (7th Cir. 2014) (ALJ erred by selectively ignoring evidence that contradicted her findings).

Even if the vocal cord paralysis is not a severe impairment, a finding the court leaves for remand, the administrative decision erred by not considering all the impairment evidence in its RFC

assessment. 20 C.F.R. § 404.1545(a)(2); SSR 96-8p, 1996 SSR LEXIS 5, 14-15 (ALJ must consider limitations and restrictions imposed by all of the claimant's impairments, including non-severe impairments); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (ALJ must consider the "entire constellation of ailments," including those that are not severe). Though the ALJ incorporated a long list of evidence to substantiate his RFC finding generally, the RFC analysis omitted as a consideration her vocal cord paralysis or any speech-related impairment. The court cannot say that the administrative decision established a logical bridge. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (ALJ must "sufficiently connect[] the dots between [a claimant's] impairments, supported by substantial evidence in the record, and the RFC finding").

For these reasons, the court must remand the administrative decision. On remand, the ALJ should consider the evidence regarding Ms. Wolford's ability to speak for longer than an hour in determining whether her vocal cord paralysis is a severe impairment, whether any further medical or other assessment is needed, and whether as an impairment at all this affects her RFC.

B.     *Opinion Evidence Conclusions.*

Ms. Wolford's claim was filed after March 27, 2017, so the ALJ's evaluation of medical opinions is governed by 20 C.F.R. § 404.1520c. This regulation requires the ALJ to evaluate the medical opinions presented and explain the persuasiveness of each. *See* 20 C.F.R. § 404.1520c(a), (b). Each medical opinion must be evaluated using the factors in 20 C.F.R. § 404.1520c(c)(1)-(5): supportability, consistency, relationship with the claimant, and specialization, along with others the ALJ may choose to incorporate.

Of these, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain how he considered the supportability and consistency factors for each medical opinion but is not required to explain how he considered the other factors. *Id.* A failure to discuss supportability and consistency requires remand. *See Willis v. Acting Comm'r of Soc. Sec.*, 2022 U.S. Dist.

7

LEXIS 116679, 9 (N.D. Ind. June 30, 2022). Here, as in all parts of an ALJ's opinion, an ALJ must build a logical and accurate bridge between evidence and conclusions to enable meaningful review. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Once again, an ALJ is not required to consider every piece of evidence, but he may not ignore contrary lines of evidence or cherry-pick evidence. *See Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020).

Ms. Wolford claims that the ALJ departed from all medical opinions in his RFC assessment without sufficient explanation that would constitute a logical and accurate bridge between the evidence and his conclusions. The ALJ found that the internist/cardiologist's (Dr. James Todd) opinion was "persuasive," that the agency medical and psychological consultants' (Dr. J.V. Corcoran and Dr. Jerry Smartt, Jr.) opinions were "generally persuasive," that the consultative medical examiner's (Dr. R. Gupta) opinion was "somewhat persuasive," and that the treating physician's (Dr. Liping L. Zhong) opinion was "not persuasive" [R. 15-16].

The ALJ accepted Dr. Todd's opinion because he deemed it consistent with both the objective evidence and the record as a whole, as well as supported by cites to the record [R. 15]. Despite finding his opinions persuasive, the ALJ rejected Dr. Todd's assessment that Ms. Wolford had no severe impairments and found "the claimant is slightly more limited than Dr. Todd [concluded]" because of her "subjective complaints of pain and her breathing issues" [*id.*]. The ALJ found three severe impairments and prescribed a light RFC with limitations [R. 12, 14]. The administrative decision seems never to elaborate on which of Ms. Wolford's subjective complaints of pain were sufficient to counter part of a persuasive medical opinion or why. The discussion of Dr. Todd's opinion—only in generic terms as an "opinion"—forecloses meaningful review and prevents the court from tracking the rationale between an unidentified opinion and the final administrative decision.

General statements about supportability and consistency aren't enough. As other judges in this district have recognized, general statements without further explanation are insufficient under the new

8

regulations and require remand because they offer no logical bridge between the medical evidence and the ALJ's conclusion. *See, e.g.*, *Willis*, 2022 U.S. Dist. LEXIS 116679 at 9, 12-13 ("Failure to adequately discuss supportability and consistency requires remand."); *Tammy M. v. Saul*, 2021 U.S. Dist. LEXIS 112293, 18 (N.D. Ind. June 16, 2021). This is particularly cogent here when the administrative decision seems to leave undefined the "opinion" that it finds persuasive from Dr. Todd or the "opinion" that it finds less than compelling.

Similarly, despite finding the agency medical and psychological consultants' opinions "generally persuasive," the ALJ departs from their conclusions about severe impairments without explanation as to why he finds them either persuasive or rejectable. The administrative decision says their findings "are supported by the objective evidence reviewed by these doctors and well explained [and] consistent with all the other evidence in the record from all other sources" [R. 15]. However, as before, conclusory statements about supportability and consistency aren't enough without sufficient reasoning that would enable the court to trace it. *See Martin*, 950 F.3d at 375; *Zurawski*, 245 F.3d at 888; *Clifford*, 227 F.3d at 874.

Next, Ms. Wolford argues that Dr. Gupta's findings, despite being "somewhat persuasive" in the ALJ's assessment, "supported," and "consistent with all other objective evidence in the record from all other sources" were disregarded without explanation. The ALJ concluded that Dr. Gupta found no "specific functional limitations" [R. 15], though Dr. Gupta opined that Ms. Wolford was "unable to do any prolonged standing or walking due to pain in bilateral feet." [R. 803].[2] Ms. Wolford argues that this contradicts the ALJ's RFC conclusion of light work, which includes standing and walking, each limited to six hours out of an eight-hour workday. The court need not decide whether

---

[2] Ms. Wolford argues that if the ALJ found Dr. Gupta's opinion vague, he should have contacted Dr. Gupta to seek clarification; however, the Commissioner correctly responds that an ALJ has discretion in deciding whether to recontact a medical source if the ALJ believes sufficient evidence exists without recontact to reach a conclusion. *See Palmer v. Saul*, 779 F. Appx. 394, 398 (7th Cir. 2019); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

9

the light-work RFC contradicts Dr. Gupta's opinion as the administrative decision has again not built a logical bridge between the evidence and its conclusion about Dr. Gupta's opinion. As with Dr. Todd, the ALJ's general statement about supportability and consistency isn't enough.

Curiously, the Commissioner flips the analysis: rather than justify the ALJ's actual conclusion that Dr. Gupta's opinion was "somewhat persuasive" because it was "supported by the physical findings in his own treatment notes" and "consistent with all the other objective evidence in the record from all other sources," the Commissioner attempts to justify the administrative decision by arguing that it reasonably concluded that Dr. Gupta's opinion that Ms. Wolford could not stand or walk for prolonged periods was "not supported by the record." This reasoning appears nowhere in the administrative decision. The contradiction underscores the absence of a logical and accurate bridge between the evidence and the ALJ's conclusion about Dr. Gupta's opinion.

Finally, the administrative decision found the opinion of Ms. Wolford's treating physician, Dr. Zhong, not persuasive because it was not "supported by his own treatment notes or consistent with all of the other evidence" and "appear[ed] to be based in large part on the claimant's subjective complaints" [R. 16]. Elsewhere, the ALJ turned to subjective complaints as sufficient evidence to reject portions of Dr. Todd's opinion. The court cannot trace the administrative decision's reasoning why it finds subjective complaints reliable enough to disbelieve portions of a non-treating, non-examining opinion it finds persuasive and simultaneously unreliable enough to discredit a treating, examining doctor's opinion. Perhaps some of Ms. Wolford's subjective complaints were to be believed more than others, but the administrative decision leaves such an explanation unarticulated. As the ALJ did not "provide enough analysis to allow a reviewing court to determine why" the opinion was rejected on this basis, the court remands. *Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018).

The Commissioner also points out that the administrative decision discredited Dr. Zhong's opinions because Ms. Wolford's physical examinations had been "relatively normal." The

10

administrative decision cites various records on this point; and, to the extent that the record provides substantial evidence to support this finding, then the ALJ may be perfectly within his role to discredit medical opinion, among the various factors for consideration. But the court cannot say, in review of this point and the record, that this view of Dr. Zhong's opinions would remain unshaken once the ALJ revisits the other reason for discounting these opinions (based on subjective complaints) and articulates the basis for doing so, *see supra*, or considers the full scope of Dr. Zhong's medical and clinical examination findings and treatment relationship since February 2019 and actually articulates the reasons why he finds these opinions unsupported or inconsistent with the medical record. The court leaves to the ALJ the construction of this logical bridge.

## CONCLUSION

Accordingly, the court GRANTS Ms. Wolford's request for remand and REMANDS the Commissioner's decision.

SO ORDERED.

February 27, 2023

*s/ Damon R. Leichty*
Judge, United States District Court